JAMES HOUGHTON

*vs.*

MICHAEL LYNCH.

The master of a vessel, though not owner thereof, may maintain an action, in his own name, for the taking or conversion of, or injury to, the goods intrusted to his care as master.

A vessel having on board two packages for defendant, by mistake landed, in place of one of them, a package belonging to another person. *Held:* That without a delivery to defendant, and acceptance by him, there would, in the absence of a special undertaking, be no consideration to support any obligation on the part of the defendant to take care of the package so landed.

This action was commenced in the District Court for Carver County, to recover the value of a keg of brandy, alleged to have been delivered by plaintiff to defendant by mistake. It appeared from the testimony on the part of the plaintiff on the trial, among other things; that the plaintiff was master of the steamboat Mollie Mohler, which was owned and run by the N. W. U. Packet Co., he having no interest in the boat, or her earnings: that a barrel of whiskey, and keg of brandy, were shipped on board of said boat at St. Paul, consigned to defendant at Mendota; that when the boat arrived at Mendota, instead of delivering the whiskey and keg of brandy, under the direction of the mate, the keg of brandy and, by mistake,

another keg of brandy, which was consigned to a man in Faribault, were rolled out of the boat upon the bank: that the defendant was there, and receipted for two packages, one barrel of whiskey, and $\frac{1}{8}$ cask of brandy, and paid the freight, was seen to look at the kegs and afterwards acknowledged that he saw them: that plaintiff had paid the shipper for the keg of brandy in dispute, and that defendant's barrel of whiskey had been delivered to him. From the testimony on the part of the defendant, it appeared, among other things, that after defendant signed the receipt, and paid the freight, he looked at the kegs, found the whiskey was not there, and called out to the plaintiff several times, that he had not got his barrel of whiskey; that at the time the wind was blowing and there was considerable noise, so that plaintiff might not have heard him: that he took his keg of brandy away, leaving the other where the boat left it: that the keg in controversy was seen by several persons during the day on which it was landed, standing in the same place: that it disappeared during the following night. One witness testified that he saw the keg, a day or two afterwards, in the brush, with the head broken in, and a little liquor in it. These were substantially the facts proven, although the witnesses on one side swore positively to a delivery of the keg to the defendant, and on the other side, that defendant did not receive it. The jury before whom the case was tried found a verdict for plaintiff for $90.50. The defendant made a motion for a new trial, which was denied, and he appeals from the order denying the same, to this Court.

W. H. GRANT, for Appellant.

1st. By the plaintiff's own showing his negligence contributed to the loss, if any, of the property in question, and therefore he cannot recover. *Tonawanda R. R. Co. vs. Munger,*

5 *Denio*, 255 ; *Brownell vs. Flagler*, 5 *Hill*, 282 ; *Brown vs. Maxwell*, 6 *Hill*, 592 ; *Rathbun & West vs. Payne et al.*, 19 *Wendell*, 399 ; *Barnes vs. Cole*, 21 *Wendell*, 188.

2d. There was no evidence that the defendant received the property in question, or undertook to be responsible for its safe keeping. By plaintiff's own showing he did not receipt for it; and the evidence, uncontradicted, shows that he objected as far as it was possible for him, to have anything to do with it.

3d. The plaintiff was neither the owner of the property nor the carrier, nor the bailee having the right to possession. The evidence shows the owner of the property in dispute was George P. Peabody, and that the property was in possession of the North Western Union Packet Company as the bailee or carrier, the plaintiff being but an employee or servant of the carrier or bailee, having no lien or interest in the property whatever. If the plaintiff, because he was an officer of the boat, could sue for the property in his own name, as well might the clerk or mate. *Rev. Statutes*, 1866, *page* 453, *sec.* 26 ; *St. A. D. Balcombe vs. Anson Northrop & Franklin Steele, IX Minn. Rep.*, 172.

Allis, Gilfillan & Williams, for Respondent.

I. The verdict is conclusive as to the facts.

II. A master of a vessel, or one having possession of personal property, and being liable over to the general owner, may maintain an action for an injury to it. *Story on Bailment*, secs. 93 to 93 *f*; *Angell on Carriers, sec.* 348 ; *Story on Agency, sec.* 116 ; *Waterman vs. Robinson*, 5 *Mass.*, 303.

III. A master of a vessel is liable to his owners for goods in his possession as master. *Purcival vs. Argus*, 1 *Dallas*, 184 ; *Stone vs. Ketland*, 1 *Wash. C. C. R.*, 13 ; *Schieffellin vs. Harvey*, 6 *John.*, 170. He may recover in trespass or trover, by reason of his possession and such liability.

*By the Court*—BERRY, J.

I. The master, though in some respects the servant of the owner of a vessel, is regarded, in law, as more than a mere servant. He is held personally liable both to the owner of a vessel, and to the owner of goods put on board, for their loss by negligence, as well as for a failure to transport and deliver the same under a contract of affreightment. 2 *Kent*, 599; 3 *Kent*, 162; *Dunlap's Paley on Agency*, 398; *Elliott vs. Russell*, 10 *Johns*, 6; *Schieffellin vs. Harvey*, 6 *Johns*, 177; *Shields vs. Davis*, 1 *E. C. L.*, 308; *Edwards' Bailments*, 435-6.

By virtue of his special property in the cargo, his possession of the same, his right to control it for the purpose of protecting himself, a right corresponding to his responsibility to the owner of the vessel, and the owner of the goods, he may, in his own name, maintain an action for freight, and for a taking or conversion of, or injury to the goods entrusted to his care. 1 *Ch. Pl.* 7; *Kennedy vs. Eylaw*, 17 *Ab. Pr.* 73; 1 *Ch. Pl.* 151; *Faulkner vs. Brown*, 13 *Wend.* 63; 1 *Sm. L. C.*, 6th *Am. Ed.*, 600, *Edwards' Bailments*, 56, and cases cited *supra*. The objection that the plaintiff is not the real party in interest in this case, and that the action is therefore improperly brought in his name, is untenable.

II. Upon the question of fact as to the delivery of the cask of brandy to the defendant, the jury have found for the plaintiff, but it is insisted that "there was no evidence that the defendant received the property in question, or undertook to be responsible for its safe keeping." As to the *facts* in regard to the delivery and acceptance of the brandy, there would seem to be no very material conflict in the testimony. As to the *legal effect* of the facts, as to whether they constituted a delivery and acceptance or not, the opinions of

Houghton v. Lynch.

the witnesses, as expressed in their testimony, are contradictory, but this is not very important.

We think the jury were warranted by the evidence in inferring, that this was a case of mistake, in which the plaintiff, having on board of his boat a barrel of whiskey for the defendant, inadvertently landed a cask of brandy belonging to another person, and destined to another point, in place of the barrel of whiskey, intending to deliver the cask to the defendant, and supposing that it belonged to the defendant.

But we fail to discover any evidence in the case having a reasonable tendency to show a delivery of the cask to the defendant, or any acceptance by mistake or otherwise of the same, by the defendant in place of his barrel of whiskey. Without such delivery and acceptance (and in the absence of any special undertaking, and none is claimed here) there would be no consideration to support any liability on his part, and the verdict could not be sustained. The strongest testimony against the defendant only goes to show, that he signed a receipt for a cask of brandy, and a barrel of whiskey, and that he saw the other cask of brandy, to which this suit relates, at the time of the signing of the receipt. This does not show a delivery, or that he received, or intended to receive, the latter cask in place of his barrel, or otherwise, and his subsequent conduct repels the idea that he did receive, or intend to receive it. The order is reversed.