## SCRANTOM, Executor, *v.* THE FARMERS' AND MECHANICS' BANK OF ROCHESTER.

An executor who was insolvent and indebted to the estate, having sus-tained a loss by fire, indorsed on his policy of insurance an assignment of it to himself as executor, and, upon receiving payment, deposited the money in a bank to his credit as executor: *Held*, an appropriation of it in payment of his debt.

It is no defence to the bank, against the claim of the estate, that it paid over the money upon the demand of a receiver of the executor's pro-perty, appointed in the suit of another creditor

APPEAL from the Supreme Court. The plaintiff was one of the executors of T. M. Watson, deceased, and on the 4th day of May, 1858, he deposited in the defendant's bank a sum of about $350, of which $72.37, a balance undrawn, is claimed to be recovered in the action. The account in the books of the bank was opened with "Henry Scrantom, Executor," and it was entered in this manner by the direction of the plaintiff. At the time of the deposit, the plaintiff was indebted to the estate which he represented in a larger sum than the amount of the deposit. The money deposited was the proceeds of a claim which the plaintiff had in his individual right against an insurance company on account of a loss by fire, of property which the company had insured. The plaintiff had procured a draft from the company's agent for the amount, to be drawn in his favor as executor. He left the draft with the bank for collection, and the deposit was of its proceeds. Shortly before making the deposit the plaintiff, being insolvent, wrote and signed an instrument purporting to assign to himself and his co-executor, Robbins, who did not act, and had never acted, as executor, all his right and title to the above-mentioned policy of insurance, but the paper was not delivered to any one, and it did not appear that it ever came to the knowledge of his co-executor. In June succeeding the time of the deposit, a creditor of the plaintiff obtained judgment against him for a sum exceeding the above balance. After the return of an execution unsatisfied, proceedings supplementary to the execution were instituted, which resulted in the appointment of a receiver of the plaintiff in that action who claimed the balance of the deposit from the bank, and it was paid to him on the 4th day of August following. The plaintiff, before this suit was brought, had demanded of the defendant the money to be paid to him as executor of the estate of Watson.

The referee, before whom the case was tried, decided that the depositing of the money to a special account, in the manner mentioned, was an appropriation of it to the payment of his defalcation as executor, and that was in the nature of a preference which a person indebted, though insolvent, has a right

to make. Judgment was accordingly rendered in favor of the plaintiff for the above balance and interest. The judgment was affirmed at a general term on appeal, and the defendants appealed here.

*William F. Cogswell,* for the appellant.

*Martin S. Newton,* for the respondent.

SUTHERLAND, J. This action was certainly brought by the plaintiff as executor. The plaintiff complains as executor, and I do not see how the defendant can deny that he meant to bring the action as executor.

No objection was taken, either by demurrer or answer, that Robbins was not a party plaintiff, and the defendant could not make the objection at the trial. (Code, §§ 144, 147, 148 · *Bidwell* v. *The Astor Mutual Insurance Company,* 16 N. Y., 266; *Zabriskie* v. *Smith,* 3 Kern., 336.)

The referee did not decide that the assignment of the policy of insurance by the plaintiff to himself as executor, transferred the money secured thereby to the estate of T. M. Watson; nor do I think it was necessary for him so to decide. The draft was made payable to the plaintiff as executor; was deposited by him with the defendant for collection, and the avails of the draft received by the defendant and placed to the credit of Henry Scrantom, executor. I think these facts show an intention to apply this money on his indebtedness to the estate, and an appropriation of it in part payment of such indebtedness, irrespective of the question whether he could assign the policy to himself as executor. The plaintiff's indebtedness to the estate of Watson is not disputed. He had a right to pay that debt before any other debt; his co-executor Robbins did not act, and had never acted as executor. How could he very well apply the money on his debt to the estate otherwise than as he did? The bank certainly was a very proper place for him to keep the money of the estate in. There was no evidence of a fraudulent intent, unless an intent to prefer his debt to the estate can be called fraudulent.

But assuming that his purpose was not to apply the money on his debt to the estate, but to cover it up and keep it from his creditors; what right had the defendant to adjudicate the question of fraud, and volunteer to do justice to these creditors? What right had the defendant to pay the money to the receiver? The defendant received the money on deposit in a fiduciary capacity of the plaintiff as executor; and I think it was a breach of the trust upon which it was received to pay it to the receiver as the defendant did.   It was not a special deposit, and therefore the relation of bailor and bailee did not exist between the plaintiff and the defendant; but the money was received by the defendant upon a trust like that implied on a bailment.   Now it is well settled, as a general rule, that a bailee cannot set up against his bailor a better title in a third party.

But it is said if the goods are taken from the bailee by the authority of law exercised through regular and valid proceedings, it will be a defence to an action by the bailor. (*Bliven* v. *Hudson River Railroad Company*, 35 Barb., 191; *Burton* v. *Wilkinson*, 18 Vt., 186.)   It is doubtful whether the bailee has a right to yield to regular legal proceedings without defending, or at least notifying the bailor of such proceedings.   But however this may be, this principle will not help the defendant. The order appointing the receiver did not authorize him to demand and receive this particular deposit or sum of money, but the property of the plaintiff generally.   The defendant undertook to adjudicate, that the money was not the money of the estate of Watson, but of the plaintiff, and paid it to the receiver as the money of the plaintiff, not as the money of the plaintiff as executor, although the defendant had collected it and held it for the plaintiff as executor.

It is plain to me that the judgment of the Supreme Court should be affirmed, with costs.

DAVIES, WRIGHT, GOULD and SMITH, Js., concurred.

DENIO, J. (dissenting.)   I do not think this judgment ought to be sustained.   The special accounts which dealers are in the

habit of keeping with banks, by procuring an addition or abbreviation of the word executor, administrator, trustee, attorney or the like, to be attached to their names in the books, are not appropriations of the amount deposited, to the beneficiaries to which the accounts allude, but are simply a method which the dealer adopts for his convenience in determining from time to time to what account the funds which he has in bank belong, as between himself and the estate or the party which he represents in any of the characters referred to. In *Swartwout* v. *The Mechanics' Bank of New York* (5 Denio, 555), the plaintiff opened an account in the defendant's bank in his own name as collector, he then being United States Collector of Customs of the port of New York. When he went out of office he assigned the balance standing to his credit to J. T.; and the action was brought by him in the name of Swartwout as nominal plaintiff, as the forms of action then required. The defendant set up that it was a deposit bank of the United States, and moreover that the United States were indebted to it for moneys disbursed. It was held that the plaintiff was entitled to recover. The court observed that there was nothing in the case to show that depositing in this bank, in the manner which was done, was by any direction or order of any officer of the government. "This being so," the opinion states, "we must assume that this deposit was like any other one, liable to be drawn by the depositor. The addition of 'collector' in the keeping of the account may have been and probably was to distinguish and keep separate the money he received in his official capacity from that which he received in his own individual capacity. But a deposit in this manner can hardly be deemed a payment over of the money in discharge of his official duty or the execution of his trust. It is placed in deposit, ready to be paid over, upon his own draft, when called upon by the proper officer or authority." This, I think, is substantially the character of the deposit in the present case. It was not the money of the estate which the plaintiff represents that was deposited, if that circumstance would make any difference, nor was it the produce of any assets disposed of

by the plaintiff in his character of executor, but it was the individual money of the plaintiff. The paper which he made and signed and kept in his own possession was of no legal force. The case, then, was substantially this: the plaintiff had committed a devastavit, in appropriating to his own use the assets of the estate, and he was insolvent. He then became entitled to a sum of money in his own right with which, as was quite proper, he desired to indemnify, as far as it would go, the persons who, as creditors, legatees or next of kin, might be entitled to participate in the distribution of the assets. This he might have done by actual payment to these beneficiaries, according to their respective rights and interests; by placing the funds in the hands of his co-executor to be paid out in the course of administration, or by an assignment to a trustee for that purpose. But while the money remained under his own control, the beneficiaries had no more title to it than any other of his creditors. While it remained to the credit of his account in bank, he was entitled to draw it out at any time, subject only to the requirement of using the addition to his name which he had directed to be attached to the heading of the account. No privity was established, by means of the account, between the defendant's bank and the creditors or legatees. There is no evidence that the defendants knew who they were, or indeed that they were informed of whose estate the plaintiff was the executor. A moment's reflection will show the error of considering the bank as the trustee of the parties interested in the estate. If it was such trustee, it was obliged to hold the funds for the benefit of, and to pay them out to, the parties justly entitled to them. This would involve the taking of an account of the administration of the estate, a duty which the law has entrusted to the surrogate or the other courts, and which usually involves a good deal of detail. Again, if the bank is to be considered the trustee of the beneficiaries, it would be liable if it paid out the funds to the plaintiff (who might misappropriate them as he had done the original assets), or to any person upon his check. It is scarcely necessary to say that banks do not

charge themselves with these duties, or incur these obligations by suffering an executor or other trustee to become a depositing dealer with them, even though he indicates in the title of the account that he considers his deposits as trust moneys. It is still more unreasonable to say that such a deposit is an accounting *pro tanto* by the executor, or a payment in discharge of himself. The beneficiaries are not parties to the transaction, and the deposit does not create legal relations of any kind between them and the bank.

It follows from what has been said that these funds, or the debt which their deposit with the defendant created, remained the property of the plaintiff like any other money or choses in action which he might possess. They were subject to the legal diligence of his creditors. The parties to whom they were eventually paid, were the first to avail themselves of the legal instrumentalities which the law has provided for the collection of debts, and the receiver appointed in their suit having presented himself to the bank and demanded the payment of the money, it was in my opinion the duty of the defendants to yield to that claim as they have done.

I am therefore in favor of reversing the judgment of the Supreme Court and ordering a new trial.

ALLEN, J., also dissented.

                                                    Judgment affirmed.